**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger**

**Civil Action No. 17-cv-02074-MSK-KMT**

**ERIN JOHNSON,
JOCELYN KLEIN,
SARAH FLANSBURG,
SUSAN TATE,
LINDY GUNN,
LAURA SCIARCON,
ERICA BERINGER**

      Plaintiffs,

v.

**COLORADO SEMINARY,**

      Defendant.

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court pursuant to the Plaintiffs' Partial Motion for Summary Judgment **(# 67)**, the Defendant's ("FELC") response **(# 77)**, and the Plaintiffs' reply **(# 79)**; and FELC's Motion for Summary Judgment **(# 68)**, the Plaintiffs' response **(# 78)**, and FELC's reply **(# 82)**.[1]

---

[1]     Also pending is a request **(# 63)** by the Defendant to dismiss the claims of opt-in Plaintiff Casey Hall as a sanction for her refusal to participate in discovery. The Plaintiffs do not oppose this request. The Court finds that it is undisputed that Ms. Hall was aware of the requests that she provide discovery and that and that she failed to do so, demonstrating her culpability. The burden of that failure prejudices the Defendant significantly, insofar as discovery is now closed, yet the contours of Ms. Hall's claims remain unknown. The Court finds that, because of Ms. Hall's conscious refusal to participate in the prosecution of her claims, the only effective sanction is dismissal. Accordingly, the motion is granted and Ms. Hall's claims are dismissed with prejudice.

## FACTS

The Court briefly summarizes the pertinent facts here and elaborates as necessary in its analysis.

Although the parties disagree as to many facts, at least the basic contours of this dispute are mostly undisputed. The Defendant, through the University of Denver, operates the Fisher Early Learning Center ("FELC"). According to the Defendant, FELC is "a nationally-accredited early learning center," although the Plaintiffs describe it as simply "a large child-care center." The Plaintiffs are among the employees of FELC, responsible for the care and instruction of the children, ranging in age from 6 months to 3 years old.

Initially, FELC considered its employees to be "teachers," exempt from the Fair Labor Standards Act's ("FLSA") overtime requirements. Thus, FELC employees were only paid their regular salary, regardless of how many hours they worked per week. However, in mid-2016, in anticipation of a change in regulations, FELC revisited that issue and decided to instead treat the employees as covered by the FLSA and entitled to time-and-a-half wages for hours worked over 40 in a week. FELC also decided to compensate the employees for any overtime they had worked since June 1, 2014. Lacking comprehensive documentation on employees' hours over that two-year period, on or about November 17, 2016, Rebecca Tankersly, FELC's Director, wrote to FELC's employees asking them to "document your overtime from June 1, 2014 [to] November 30, 2016." Each of the employees, including the Plaintiffs, did so. FELC officials made adjustments to the hours claimed by certain employees (including the Plaintiffs), then paid the employees one-and-one-half times their average hourly rate for any overtime hours that had been identified.

The Plaintiffs believe that FELC owes them additional sums for unpaid overtime, and on August 29, 2017, they commenced the instant action asserting: (i) a claim for unpaid overtime pursuant to the FLSA, 29 U.S.C. § 207; (ii) a claim for unpaid overtime pursuant to Colorado's Wage Claim Act, C.R.S. § 8-4-101 *et eq.*; (iii) a claim for failure to provide paid rest breaks as required by Colorado law, 7 C.C.R. § 1103-1:8; (iv) a claim for breach of contract, in that FELC promised to pay the Plaintiffs unpaid overtime but then failed to fully compensate them; and (v) a claim for promissory estoppel premised on the same facts. The Court *sua sponte* bifurcated and stayed **(# 8)** the state-law claims, such that only the Plaintiffs' FLSA claims are at issue at this time.

Both sides now move for summary judgment on their claims. The Plaintiffs' motion **(#67)** contends that: (i) the Plaintiffs are entitled to an additional payment of liquidated damages pursuant to 29 U.S.C. § 216(b); and (ii) because FELC recklessly disregarded its obligations under the FLSA, the Plaintiffs' claims are subject to a three-year statute of limitation instead of a two-year one, 29 U.S.C. § 255(a). The Defendants' motion **(# 68)** contends that it is entitled to summary judgment on the Plaintiffs' FLSA claims because: (i) the Plaintiffs still fall within the "professional" exemption and thus, are not entitled to overtime compensation under the FLSA at all; and (ii) even if the Plaintiffs are covered by the FLSA, FELC has already paid them the full amount of any overtime compensation to which they are entitled.

## ANALYSIS

**A. Standard of review**

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and

a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie*

4

claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

This case involves cross-motions for summary judgment. "Because the determination of whether there is a genuine dispute as to a material factual issue turns upon who has the burden of proof, the standard of proof and whether adequate evidence has been submitted to support a *prima facie* case or to establish a genuine dispute as to material fact, cross motions must be evaluated independently." *In re Ribozyme Pharmaceuticals, Inc., Securities Litig.*, 209 F. Supp. 2d 1106, 1112 (D. Colo. 2002); *see also Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

### B. FELC's motion

The Court begins with FELC's motion because, if FELC is correct and the Plaintiffs are FLSA-exempt, the Court need proceed no further.

#### 1. Exempt status

The FLSA exempts from its overtime coverage "any employee employed in a bona fide . . . professional capacity." 29 U.S.C. § 213(a)(1). Department of Labor regulations define the "professional" exemption, stating that the term includes "any employee with a primary duty of teaching, tutoring, instructing or lecturing in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher in an educational establishment." 29 C.F.R. § 541.303(a). It provides that "teachers of kindergarten or nursery school pupils" can fall within this definition. 29 C.F.R. § 541.303(b). Under the FLSA, an individual's "primary duty" is

5

defined as "the principal, main, major or most important duty that the employee performs," in light of the job as a whole. 29 C.F.R. § 541.700(a). In considering what constitutes an employee's primary duty, the court considers several factors, such as the relatively importance of exempt duties compared with other types of duties, the amount of time the employee spends performing exempt work, the employee's relative freedom from direct supervision, and the relationship between the employee's salary and the wages paid to other employees for nonexempt work. *Id.* Often, but not always, an employee's "primary duty" will be the task that occupies more than 50% of their work time. 29 C.F.R. § 541.700(b).

An "educational establishment," in turn, is defined as "an elementary or secondary school system . . . as determined under State law." 29 C.F.R. § 541.204(b). That regulation goes on to explain that "[u]nder the laws of most states," an elementary school system "includes the curriculums in grades 1 through 12," but that "[s]uch education in some States may also include nursery school programs in elementary education." *Id.*

Thus, the two elements necessary to demonstrate the professional exemption for teachers is that: (i) the employee's primary duty involves imparting knowledge; and (ii) the employer is an educational establishment. *See Fernandez v. Zoni Language Centers, Inc.*, 858 F.3d 45, 49 (2d Cir. 2017). FELC bears the burden of proving that the Plaintiffs are exempt under the FLSA. *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 826 (10th Cir. 2012).

The Court has carefully reviewed the extensive materials that both sides have submitted on this issue. Taking that evidence in the light most favorable to the Plaintiffs, as the Court must

on FELC's motion, the Court finds that there is a genuine dispute of fact requiring trial as to whether the Plaintiffs' primary duty involves imparting knowledge.[2]

The record reflects that the Plaintiffs may tend to children as young as 6 months old and may spend considerable amounts of work time on tasks such as feeding children, helping them use the bathroom, wiping and sanitizing tables, supervising nap time, communicating with parents, and so on. A reasonable factfinder could conclude that these tasks, and many others that the Plaintiffs perform, constitute the Plaintiffs' primary duty and that such tasks do not involve imparting knowledge. FELC takes the position that literally every moment the Plaintiffs spend with children is imparting knowledge. As Hema Visweswaraiah testified, "when they're changing a diaper, our diaper changing rooms have pictures on the walls. There is a back-and-forth language exchange with the infants at all times when that's happening. There is an explanation of what's happening, there is the opportunity for the infant to imitate the teacher's dialogue with them." This Court has some doubt that, simply because pictures are displayed on walls or a Plaintiff is speaking to an infant of undisclosed age, that "teaching" is occurring. But ultimately, that issue is one for the factfinder to resolve. Accordingly, the Court denies FELC's motion to the extent it seeks a finding that, as a matter of law, the Plaintiffs are exempt teachers.

2. <u>Whether the Plaintiffs were already paid all overtime owed to them</u>

FELC argues that, in the alternative, it can show that it has paid the Plaintiffs all of the possible compensation that they may be entitled to under the FLSA, rendering their claims moot.

The Court begins this argument with the limitations period applicable to the FLSA, as that period will fix an outer bound on the amount of compensation the Plaintiffs can claim. The

---

[2] As a result, the Court does not reach the question of whether FELC meets the definition of an "educational establishment."

FLSA's ordinary statute of limitation is two years, but in situations where the employer's violation can be deemed "willful," the statute extends that period to three years. 29 U.S.C. § 255(a). Although the Court returns to this issue below, it will assume, at this point in the analysis, that the three-year limitation period applies. Thus, the Plaintiffs would be entitled to overtime compensation dating back to August 29, 2014, three years prior to the filing of the Complaint.[3] But the record reflects that FELC's voluntary payment of overtime wages encompassed a period dating back to June 2014, several months longer than any applicable limitation period. Thus, to the extent that FELC's payments were otherwise correct, the record reflects that the Plaintiffs would have been paid for all of the compensation that could recover even under the three-year "willful" limitation period.

Next, the Court turns to the question of whether the payments made by FELC in 2016 fully compensated the Plaintiffs for any unpaid overtime owed to them at that time.[4] Two issues arise with regard to this question: (i) whether FELC properly calculated the Plaintiffs' hourly rate; and (ii) whether FELC included "liquidated damages" under 29 U.S.C. § 216(b), essentially doubling the amount of unpaid wages that it owed.[5]

---

[3] Certain Plaintiffs joined this litigation through the filing of consent notices between January 26, 2018 and April 26, 2018 (**# 38, 39, 41, 42, 45, 46**). These Plaintiffs' claims are deemed asserted when those notices were filed, not at the commencement of this case. 29 U.S.C. § 256(a). Thus, for these Plaintiffs, a three-year limitation period would extend back to somewhere between January 26 and April 26, 2015.

[4] The Court does not understand the Plaintiffs to contend that FELC has failed to pay them overtime compensation since re-classifying them as non-exempt employees in 2016. Thus, the Court understands this dispute to be limited to overtime obligations arising between 2014 and 2016.

[5] It is undisputed that, after asking the Plaintiffs to estimate the number of overtime hours they worked between 2014 and 2016, FELC unilaterally reduced those estimates in various respects when deciding upon payments for past overtime. In its motion, FELC does not offer any argument justifying those reductions; instead, it argues that its payments fully compensated

Turning to the first issue, the FLSA provides that an employee must receive overtime compensation at one-and-one-half times her "regular rate" of pay. 29 U.S.C. § 207. A salaried employee's "regular rate" is calculated by dividing the salary by the number of hours for which the salary is intended to compensate. *Aaron v. City of Wichita*, 54 F.3d 652, 655 (10th Cir. 1995). This calculation presents no problem when it is clear that the salary is intended to compensate the employee for a fixed number of hours each week, but the calculation becomes more difficult if the employee's weekly hours are variable or fluctuating. The Department of Labor's regulations provide that "[w]here there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number," the calculation of the employee's "regular rate" will be based on <u>all</u> hours worked in a given week. 29 C.F.R. § 778.114(a). This is sometimes referred to as the "fluctuating workweek" rule. However, this approach also requires that "the employer pays the salary even though the workweek is one in which a full schedule of hours is not worked." 29 C.F.R. § 778.114(c).

There appears to be no dispute that although the Plaintiffs' job was sometimes described or conceptualized as one for "40 hours per week," the Plaintiffs regularly worked well in excess of 40 hours per week, yet never expected or asked that their salary be adjusted accordingly. In such circumstances, although there may not have been an express discussion about what the Plaintiffs' salary encompassed, "it is clear from the employee's actions that he or she understood the payment plan." *Clements v. Serco, Inc.*, 530 F.3d 1224, 1231 (10th Cir. 2008).

---

the Plaintiffs even based on their own estimation of their hours. Thus, the Court will adopt the Plaintiffs' own hours estimates for purposes of this portion of the analysis.

9

However, the Plaintiffs argue that they were subject to having their pay docked if they exceeded their allotment of paid time off in a pay period. Opinion letters from the Department of Labor have indicated that "where there is no paid leave to substitute for employee absences, the employer may not make deductions from the employee's guaranteed fixed salary under the fluctuating workweek method of compensation." *Thomas v. Bed Bath and Beyond, Inc.*, 309 F.Supp.3d 121, 134 (S.D.N.Y. 2018). There is some evidence that FELC had a policy permitting employees' salaries to be docked if they exceeded their allotment of paid time off, although the record does not reflect that it was ever actually applied to dock the pay of the Plaintiffs or anyone else. Indeed, the record reflects that, in practice, FELC maintained a degree of flexibility in how its paid time off system was applied, as several employees testified that they were able to miss work to attend appointments and classes without always being required to spend any of their accrued paid time off. This Court agrees with the reasoning in *Thomas* that the inquiry is ultimately a practical, rather than technical, one: whether the employer did indeed intend to pay the employees on a regular salaried basis. *Id*. at 136. Under these circumstances, the Court cannot conclude that FELC's sporadically-mentioned and entirely-hypothetical ability to "dock" employees salary for exceeding paid time off limits placed it outside of the "fluctuating workweek" rule of 29 C.F.R. § 778.114(a). *See e.g. Mitchell v. Abercrombie & Fitch Co.*, 428 F.Supp.2d 725, 736 n. 16 (S.D.Oh. 2006) (finding fluctuating workweek rule satisfied even though employees were, at least theoretically, "subject to docking" if they did exceeded leave limits).

With the conclusion that the Plaintiffs' regular rate is calculated according to the fluctuating workweek rule, the assumption is that the Plaintiffs' salary already compensated them at straight-time rates for all hours worked in each week, and thus, the overtime premium

due to them is one-half of their regular rate for each overtime hour.[6] *Clements*, 530 F.3d at 1230. However, when FELC made its payments of back overtime to the Plaintiffs, it did so at the <u>one-and-one-half time rate</u> – rather than the half-time rate permitted by the fluctuating workweek rule – although it often did so based on "adjustments" to the Plaintiffs' self-reported overtime hours. FELC provides calculations that show that, because it paid an overtime premium greater than required under the fluctuating workweek rule, the benefit to the Plaintiffs more than offset any detriment that resulted from FELC adjusting the Plaintiffs' claimed number of hours downward. A single example suffices to demonstrate:

> Ms. Johnson self-reported 1,718 overtime hours over a period of 74 weeks in 2014 and 2015, yielding an average of 23.22 overtime hours per week or a total average workweek of 63.22 hours. Her salary was $29,729, dividing that by 52 weeks yields a weekly rate of $571.71 per week. Dividing $571.71 by 63.22 hours per week yields a average regular weekly rate of $9.04 per hour worked. The overtime premium she was owed was one-half of $9.04 per hour or $4.52 per overtime hour. Thus, the total overtime premium owed to her was $4.52 x 1,718 hours or **$7,765.36.** FELC, however, paid Ms. Johnson **$11,757.05** to reflect all unpaid overtime.[7] Thus, Ms. Johnson received more than she would have been owed under the FLSA.

---

[6] If the fluctuating hours rule did not apply, the conclusion would be that the Plaintiffs' salary compensated them for only 40 hours per week (or perhaps 45, as some Plaintiffs testified), and that they received no compensation whatsoever for overtime hours. In such circumstances, the overtime premium due to them would be one-and-one-half times their regular rate. *Clements*, 530 F.3d at 1230.

[7] FELC reduced the hours claimed by Ms. Johnson from 1,718 down to 550. This had the effect of reducing her average week to 47.4 hours, but increasing her regular rate to $12.05 per hour. (FELC's calculation spreadsheet yields a different figure, but the discrepancy need not be resolved here.) FELC then paid her <u>1.5 times</u> that $12 rate for those 550 hours, roughly yielding the $11,000 payment.

The Plaintiffs have not disputed the correctness of FELC's calculations nor the fact that, if the fluctuating workweek rule applies, each Plaintiff has been paid the full amount (and more) of unpaid overtime premiums.

The Plaintiffs argue, however, that they are also entitled to a doubling of the amounts that were owed to them as of 2016, because the FLSA allows a successful claimant to recover "liquidated damages" in an amount equal to any owed-but-unpaid wages. 29 U.S.C. § 216(b) provides that "[a]ny employer who violates the [overtime] provisions of this title shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation [ ] and in an additional equal amount as liquidated damages." Thus, using Ms. Johnson's example above, the Plaintiffs contend that FELC's liability would be $7,765.36 in unpaid overtime, plus an additional $7,765.36 in liquidated damages, for a total of more than $14,000. In such circumstances, the Plaintiffs contend that the $11,000 payment to Ms. Johnson did not discharge all of FELC's liability.

An employer may be able to avoid the imposition of liquidated damages by showing that its violation of the FLSA was "in good faith and that he had reasonable grounds for believing that his act or omission was not a violation." 29 U.S.C. § 260. This standard has two components: the employer must show that subjectively, it had an "honest intention to ascertain and follow the dictates of [the FLSA]"; it must also show that, objectively, its belief that it was in compliance with the FLSA was reasonable. *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3d Cir. 1991), *compare Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997) (allowing employer's satisfaction of either the subjective or objective prong to suffice). As *Martin* observes, this burden of proof is "a difficult one to meet," and that "double damages are the norm, single damages are the exception." *Id.*

FELC argues that its conduct in misclassifying (to the extent they are indeed misclassified) the Plaintiffs from 2014 to 2016 was not "willful." But the Court finds that the evidence adduced by FELC is not sufficient to entitle it to a finding that, as a matter of law, any mistake it made was in good faith and supported by an objectively-reasonable basis such that FELC could avoid imposition of liquidated damages. FELC primarily points to evidence relating to its 2016 reconsideration of its employees' exempt status, but this focus is misplaced. The violation of the statute occurred between 2014 and 2016, when the employees were (allegedly) misclassified and not paid the overtime they were due. Thus, the inquiry must focus on FELC's good faith and reasonable belief that the employees were exempt <u>as of</u> 2014 and 2015. There is practically no evidence in the record of FELC's justification for classifying the employees as exempt at this point in time. At most, the record reflects that the employees had been considered exempt since 2010 and that when Ms. Visweswaraiah arrived at FELC in 2010, she simply assumed that classification was correct because it was consistent with what had been done at other schools at which she worked. Accordingly, the Court cannot conclude that FELC has made a showing at this point that would be sufficient to allow it to avoid the imposition of liquidated damages.

The effect of these findings is that some, <u>but not all</u>, of Plaintiffs' claims will proceed to trial. Returning to FELC's calculations (which the Plaintiffs have not materially disputed), the record reflects that certain Plaintiffs were paid <u>more than</u> two times the amount of overtime they were entitled to between 2014 and 2016. Ms. Sciarcon claimed 1,450 hours of overtime over this period, and FELC has calculated that the overtime premium she was owed was $9,787.50. Doubled, to account for liquidated damages, Ms. Sciarcon would be entitled to $19,575.00. But the record reflects that FELC already paid her a total of $19,827.52 for unpaid overtime.

13

Because the record reflects that Ms. Sciarcon recovered all of the overtime pay and liquidated damages she was entitled to as of 2016, FELC is entitled to summary judgment on her FLSA claim here. The same is true for Ms. Tate (owed a total of $8,704.80 in unpaid overtime and liquidated damages as of 2016, paid $10,707.12), Ms. Flansburg (owed a total of $5,402.24 including liquidated damages, paid $8,154.09), Ms. Gunn (owed $5,391.68 including liquidated damages, paid $8,075.49), and Ms. Beringer (owed $7,789.06 including liquidated damages, paid $10,591.02). Indeed, the only Plaintiffs who were not fully made whole as of 2016 are Ms. Johnson (owed $15,530.72 including liquidated damages, paid $11,757.05, leaving $3,773.67 yet to be paid) and Ms. Klein (owed $23,960.58 including liquidated damages, paid $19,658.75, leaving $4,301.83 unpaid).

Accordingly, FELC is entitled to summary judgment on the FLSA claims[8] of Ms. Sciarcon, Ms. Tate, Ms. Flansburg, Ms. Gunn, and Ms. Beringer, and only the FLSA claims of Ms. Johnson and Ms. Klein will proceed to trial.

### B. The Plaintiffs' motion

The Court then turns to the Plaintiffs' summary judgment motion, to the extent it bears on Ms. Johnson and Ms. Klein's FLSA claims. The Court understands the Plaintiffs to raise three arguments: (i) that the Court should find that, as a matter of law, they are owed unpaid overtime under the FLSA; (ii) that they are entitled to summary judgment on any defense that FELC might raise seeking to avoid liquidated damages; and (iii) that the three-year statute of limitation for willful violations should apply.

---

[8] The Court expresses no opinion as to whether these Plaintiffs still may have viable state-law claims based on the reasoning herein. To the extent they do, those claims would proceed once the Court has conclusively resolved the remaining FLSA claims.

Case 1:17-cv-02074-MSK-KMT   Document 84   Filed 09/11/19   USDC Colorado   Page 15 of 18

The Court need not linger on the first issue. For the reasons discussed above, there are sharp disputes of fact between the parties regarding the nature and extent of the Plaintiffs' duties between 2014 and 2016, which tasks constituted the Plaintiffs' "primary duty," and whether that duty was instructional in nature (as well as whether FELC qualifies as an "educational establishment"). If FELC is ultimately correct, and the Plaintiffs were FLSA-exempt from 2014-2016, then the Plaintiffs are not entitled to any overtime compensation for that period. This issue will have to be resolved at trial.

The Plaintiffs' second argument circles back to whether FELC can show that any violation of the FLSA that occurred between 2014 and 2016 was in good faith and supported by objectively-reasonable grounds, such that FELC can demonstrate a predicate for the Court to exercise its discretion not to require payment of liquidated damages under 29 U.S.C. § 260. As set forth above, the Court has already found that FELC has not come forward with sufficient evidence to demonstrate that, as a matter of law, any such violation _was_ in good faith and objectively-reasonable. But the Plaintiffs' motion takes that inquiry a step further, arguing that FELC cannot come forward with _any_ evidence that would suffice to meet that standard.

FELC concedes that it has no evidence to establish the process by which it made the initial determination that its employees would be treated as FLSA-exempt, as all of its officials that made that decision have since departed FELC's employ. It also concedes that "its current employees are not personally aware of any investigation [FELC may have made into] employees' classifications _prior_ to 2016." (Emphasis in original.) It argues that it engaged counsel in 2016 and made a good-faith effort to ascertain whether its employees should be treated as exempt _in_ 2016, but as noted above, the statute's focus is on whether the employer's _violation_ of the statute was objectively-reasonable. Here, the violations of the FLSA occurred

15

each time the Plaintiffs worked more than 40 hours in a week and did not receive overtime; for purposes of this case, the Court can assume that the violations began in 2014 and continued until the employees' reclassification in 2016. Thus, 2014 through 2016 is the proper time period in which to examine FELC's rationale for classifying the employees as exempt.   (FELC's attempt to "cure" such violations via voluntary payments in 2016 may have been undertaken in good faith, but as the Court has discussed, those efforts were insufficient to cure the pre-existing violations of Ms. Johnson and Ms. Klein's rights under the FLSA.)  Because FELC concedes that it has no ability to put on evidence regarding its rationale for classifying the employees as exempt between 2014 and 2016 (besides Ms. Visweswaraiah's simple observation that "other schools did it that way"), the Court finds that FELC cannot establish the factual predicates necessary to apply 29 U.S.C. § 260.  Accordingly, the Plaintiffs are entitled to summary judgment on any affirmative defense by FELC that seeks to avoid imposition of liquidated damages based on 29 U.S.C. § 260.

Finally, the Court turns to the Plaintiffs' request for summary judgment on their contention that the applicable limitation period to be applied to this case is the three-year "willful" one of 29 U.S.C. § 255(a), rather than the normal two-year period.  As discussed above, the Court assumed the application of the willful period for purposes of evaluating FELC's motion, but the Plaintiffs' motion requests that the Court make a binding determination of which limitation period applies.  To obtain the benefit of the three-year period, the Plaintiffs must show that FELC "either knew or showed reckless disregard for the matter of whether its conduct violated the statute."  *Mumby v. Pure Energy Services (USA), Inc.*, 636 F.3d 1266, 1270 (10th Cir. 2011).  The operative inquiry "focuses on the employer's diligence in the face of a statutory obligation, not on the employer's mere knowledge of relevant law."  *Id.*   Once again, the focus

of the statutory language is on the employer's knowledge and intention as of the time that the statute was violated – namely, 2014 through 2016.  The Plaintiffs have come forward with evidence that FELC has no knowledge of why it classified the employees as exempt as of 2014, and the Court finds that an employer's inability to explain a decision to treat employees as exempt can demonstrate the employer's "reckless disregard" for its statutory obligations.  For the same reasons set forth above, the Court finds that FELC lacks any evidence to dispute this fact.  Accordingly, the Court finds that the Plaintiffs are entitled to summary judgment that any violation of the FLSA by FELC was willful or reckless, such that a three-year limitation period would apply to such violations.

## CONCLUSION

For the foregoing reasons, FELC's Motion to Dismiss **(# 63)** the claims by Ms. Hall is **GRANTED** and Ms. Hall's claims are **DISMISSED** with prejudice.  The Plaintiffs' Motion for Summary Judgment **(# 67)** is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.  FELC's Motion for Summary Judgment **(# 68)** is **GRANTED IN PART** and **DENIED IN PART**, insofar as FELC is entitled to summary judgment on the FLSA claims by Ms. Sciarcon, Ms. Tate, Ms. Flansburg, Ms. Gunn, and Ms. Beringer, but that the FLSA claims of Ms. Johnson and Ms. Klein will proceed to trial.  No party has requested the entry of a partial judgment pursuant to Fed. R. Civ. P. 54(b), and the Court finds no basis to do so here.  Thus, judgment in favor of FELC against Ms. Sciarcon, Ms. Tate, Ms. Flansburg, Ms. Gunn, and Ms. Beringer on their FLSA claims will enter at the conclusion of all other proceedings in this case.

Ms. Johnson and Ms. Klein and FELC shall begin preparation of a Proposed Pretrial Order consistent with the instructions in the Trial Preparation Order **(# 34)** and shall jointly

contact the Court within 28 days to schedule a Pretrial Conference in anticipation of trial on Ms. Johnson and Ms. Klein's FLSA claims.

Dated this 11th day of September, 2019.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge